UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**MEMORANDUM AND ORDER**
13-CV-4336

ROHAN HAMILTON,
                    Petitioner,

   – against –

WILLIAM LEE, Superintendent,
                    Respondent.

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 2 7 2015 ★

**BROOKLYN OFFICE**

**Appearances**

   **For Petitioner:**

   Lawrence Mark Stern
   Lawrence Stern
   100 Hudson Street, #6A
   New York, New York 10013

   **For Respondent:**

   Anthea Hemery Bruffee
   Kings County District Attorney's Office
   350 Jay Street
   20th Floor - Appeals Bureau
   Brooklyn, New York 11201

1



**JACK B. WEINSTEIN, Senior United States District Judge:**

I.     Introduction .................................................................................................................3

II.    Facts and Procedural History ........................................................................................4
    A.   Crime of Conviction ...............................................................................................4
    B.   State Court Direct Appeals ......................................................................................6
    C.   Motion to Vacate Conviction ..................................................................................8
    D.   Writ of Error *Coram Nobis* ....................................................................................9
    E.   Instant Petition .......................................................................................................10

III.   Applicable Law ...........................................................................................................10
    A.   Antiterrorism and Effective Death Penalty Act .....................................................10
    B.   Exhaustion .............................................................................................................12
    C.   Procedurally-Barred Claims ...................................................................................12

IV.   Denial of Right to Confront .........................................................................................13
    A.   Law ........................................................................................................................13
    B.   Application of Law to Facts ....................................................................................14

V.    Introduction of False Evidence .....................................................................................16

VI.   Evidentiary Claims ......................................................................................................19
    A.   Law ........................................................................................................................19
    B.   Application of Law to Facts ....................................................................................19

VII.  *Brady* Violation ..........................................................................................................21
    A.   Law ........................................................................................................................21
    B.   Application of Law to Facts ....................................................................................22

VIII. Ineffective Assistance of Counsel ...............................................................................23
    A.   Law ........................................................................................................................23
    B.   Application of Law to Facts ....................................................................................25
        1.   Trial Counsel .................................................................................................25
        2.   Appellate Counsel ..........................................................................................28

IX.   Unavailability of Fingerprint Evidence ........................................................................28

X.    Certificate of Appealability ..........................................................................................30

XI.   Conclusion ..................................................................................................................31

## I. Introduction

Petitioner Rohan Hamilton seeks a writ of *habeas corpus*. *See* 28 U.S.C. § 2254(d). He is currently serving a twenty-three year prison sentence and a concurrent fifteen-year sentence imposed on January 11, 2007 for Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree.

Petitioner asserts five grounds for relief: (1) he was denied the right to confront witnesses against him; (2) the introduction of perjured testimony deprived him of due process, the right to a fair trial and equal protection under the law; (3) the introduction of false and inflammatory evidence deprived him of due process; (4) crucial *Brady* material was withheld; and (5) he was denied effective assistance of counsel due to cumulative errors made by trial counsel and appellate counsel's failure to raise all the errors on direct appeal.

Amid the scattershot, he makes one point of interest: his palm print, lifted from a crucial piece of evidence, may have been placed there—or was never there at all—when the police framed him. The evidence is not available to him or his expert because it is still buried under Hurricane Sandy's debris. Thus, he urges, blocked from effective prosecution of this petition, he is entitled to have it granted.

Speculation based on surmise supported by eloquent conjecture of a skilled assigned attorney will not support federal *habeas* relief. The case was well tried without constitutional error.

The petition is denied.

## II.    Facts and Procedural History

### A. Crime of Conviction

On October 31, 2004, Shanti Paschal, mother of petitioner's son, was found dead in her

apartment. Trial Tr. 173–74, Dec. 6, 2006, ECF No. 9-12. She was bound with duct tape and

shot several times. *Id.* At trial, Dr. Algae Charlot, a medical examiner, testified that Paschal

died of blood loss from three gunshot wounds to the chest. *See id.* at 74–83. Autopsy

photographs depicting Paschal's injuries were entered into evidence during Charlot's testimony.

*See id.* at 84:11.

Detective Daniel Mulvanerty, of the New York City Police Department's Crime Scene

Unit, recovered duct tape used to bind the victim as well as a roll of duct tape, discharged bullet

shells, a deformed bullet, and a live round of ammunition from Paschal's apartment. *See id.* at

124:3–134:11; Letter from Lawrence Mark Stern, Mar. 21, 2015, ECF No. 69. Detective

Michael Dryver vouchered the duct tape and sent it to the New York City Police Department's

crime lab for further analysis. Trial Tr. at 179:22–180:23.

Detectives Dryver and Jay Hernandez arrested petitioner approximately two months after

the murder, on January 8, 2005. *See id.* at 190:10–16. On the day of his arrest, petitioner gave

three statements to Detectives Hernandez and Dryver: one oral, one handwritten, and one

videotaped. *See* Huntley/Dunaway Hr'g Tr. 15:7–30:6 (Dryver), July 11, 2006, ECF No. 9-11.

Dryver testified that petitioner was left alone with Hernandez for several minutes during the

handwritten statement. Trial Tr. 23:22–24:15. Hernandez was unavailable to testify at the trial.

Petitioner was charged under Kings County Indictment Number 327/2005, ECF No. 9-11.

In January 2005, Alynka Jean, a New York City Police Department Criminalist, and an

expert in latent print development, performed several tests on the duct tape that had bound

4

Paschal on the night of the murder. Trial Tr. 149:17–159:1. The first three tests did not yield any fingerprints. The fourth test revealed a single print. *See id.* at 163:1–4. At trial, Jean testified that she had developed a latent palm print from the duct tape removed from the victim's body; photographed the latent print; changed the color to black and white and made it brighter; ran it through a computer program "More Hits" to preserve it; and sent the photograph of the palm print to the print section. *Id.* at 152:18–159:9. She did not have the original photograph she took of the duct tape at trial. *See id.* at 160:4–23.

Latent Print Expert Detective Kennedy compared the latent print Jean developed from the duct tape with the ink prints taken from the petitioner. *See id.* at 205:19–206:2. At trial, Kennedy explained that she accessed the petitioner's prints through the department's computer system to conduct her comparison. *See id.* at 207:14–15. She testified that the print card she used for her comparison was dated January 8, 2005, the date of petitioner's arrest, and that the notation indicated that the ink prints were taken by Detective Dryver. *Id.* at 207:3–15. She found that the latent palm print found on the duct tape matched that of the petitioner. As an experienced expert, she fully explained her methodology. *See id.* at 212:4–216:21.

Petitioner's brother, Uzal Hamilton, testified that, on the night of the murder, petitioner confessed to killing Paschal. *See id.* at 32:20–33:22. Uzal Hamilton stated on the stand that he had overheard petitioner threaten to kill Paschal during a telephone conversation on October 30, 2004, and that petitioner was in possession of a gun at the time of that argument. *Id.* at 41:10–43:16.

The victim's mother, Bertha Paschal, testified that petitioner called her on the morning of November 1, 2004 and said, "That's why I killed your bitch ass daughter." *See id.* at 92:20–93:26. Bertha Paschal's boyfriend, Reginold Leroy Clark, testified that petitioner called her

house again later that morning and threatened him, saying there were many "hiding places" and "dark spots." *Id.* at 98:6–12.

Petitioner was convicted by a jury of Murder in the Second Degree, N.Y. Penal L. § 125.25(1), and Criminal Possession of a Weapon in the Second Degree, N.Y. Penal L. § 265.03(2).

On January 11, 2007, petitioner was sentenced to twenty-three years to life in prison and a lifetime term of post-release supervision on the murder charge, to run concurrently with fifteen years of imprisonment and five years of post-release supervision on the weapon charge. Both terms were to run consecutively with a two and one half year to five-year sentence that he was serving for an unrelated offense. *See* Sentence Tr. 16:16–17:10, Jan. 11, 2007, ECF No. 9-12.

### B. State Court Direct Appeals

On May 30, 2008 petitioner, represented by counsel, took a direct appeal to the New York Supreme Court, Appellate Division. See Pet'r's Br. to the Appellate Division, ECF No. 9-1. Through his appellate counsel, petitioner argued first that his Sixth Amendment right to confront the witnesses against him was violated when fingerprint and palm print cards were admitted through testimony of a print examiner, rather than the testimony of the officer who took the prints; second, that he was deprived of a fair trial when, over objection, the court admitted autopsy photographs that were so morbid, inflammatory, and cumulative of other evidence that their prejudicial effect overwhelmed any ostensible ground for their admission. *Id.* at 4–5.

Petitioner filed a *pro se* supplemental brief separately on April 20, 2009. It contained three additional claims for relief. *See* Pet'r's *Pro Se* Supplemental Br., ECF No. 9-3. First, that he was denied a fair trial in violation of his rights under the due process clause because the evidence adduced at trial was false, and known by the prosecutor prior to trial to be false. *Id.* at

22–31. Second, that he was denied effective assistance of trial counsel. Petitioner's ineffective

assistance claim was premised on trial counsel's: (1) implicating him in the charged crime during

summation; (2) failing to seek sanctions for alleged *Brady* violations; (3) failing to request all

laboratory reports and prints; (4) failing to conduct a pre-trial investigation; (5) failing to consult

an independent fingerprint expert; (6) failing to object to the prosecutor's opening statement; (7)

failing to call a purportedly exculpatory witness or to request a missing witness charge; (8)

failing to appropriately cross-examine the prosecution's witnesses; (9) failing to object to the

admission of ballistics evidence; and (10) failing to give an effective closing statement. *Id.* at

32–39. Third, that he was denied a fair trial due to judicial misconduct because the judge

expressed his opinion during *voir dire* and allowed the admission of false evidence. *Id.* at 40–42.

On October 20, 2009, the Appellate Division affirmed petitioner's judgment of

conviction with a memorandum decision. *See People v. Hamilton*, 66 A.D.3d 921, 922 (N.Y.

App. Div. 2d Dep't 2009). It held that petitioner's Sixth Amendment confrontation clause claim

was unpreserved for appellate review and without merit. *Id.* at 921–22. It found that petitioner

had not objected to the admission of the print cards on confrontation clause grounds during trial;

the cards themselves were not directly accusatory; and they were properly admitted into evidence

through the testimony of the print examiner, who was available for cross-examination. *Id.*

The Appellate Division concluded that the autopsy photographs were also properly

admitted. *Id.* at 922. They were not excessively gruesome and were not introduced for the sole

purpose of arousing the jurors' passions and prejudicing the defendant; rather, they helped

illustrate and corroborate the testimony of the examiner and established intent. *Id.*

Finally, it found the defendant's "remaining contentions raised in his supplemental *pro se*

brief unpreserved for appellate review, and in any event, without merit." *Id.*

On December 28, 2009, the Court of Appeals of New York denied petitioner's application for leave to appeal. *See People v. Hamilton*, 993 N.E.2d 1278 (N.Y. 2009).

### C. Motion to Vacate Conviction

On December 8, 2010, Petitioner filed a *pro se* motion to vacate the conviction with the New York State Supreme Court, Kings County. *See* N.Y. Crim. Proc. L. ("CPL") §§ 440.10(1)(f), (h). He claimed: (1) his due process rights were violated because he was coerced into giving a statement to the police; (2) evidence was fabricated by Detective Hernandez who was unavailable for cross examination at trial, violating his right to confrontation; and (3) the prosecution withheld *Brady* material—an earlier laboratory report and an additional photograph—that would have resulted in a different outcome at trial. *See* Letter Acknowledging Receipt of Motion, Sept. 19, 2011, ECF No. 9-6. The New York Supreme Court denied petitioner's motion. *See* Decision & Order, July 13, 2011, ECF No. 9-8.

The court held "defendant's arguments that he was coerced to provide a statement to the police, and that they falsified evidence against him, along with his contention that his right to confront witnesses at trial was violated, [were] all procedurally barred." *Id.* at 2. Specifically, his claims regarding the introduction of false evidence and the absence of Detective Hernandez's testimony at trial were barred because they had already been raised and addressed on direct appeal; the Appellate Division had found them to be unpreserved and without merit. His confrontation clause claims regarding the introduction of fingerprint and palm print evidence were not preserved for appeal because he had not objected on confrontation grounds at trial. *Id.* at 2–6.

Rejected were petitioner's claims regarding alleged coercion, planting of falsified evidence, and Hernandez's absence from testifying as procedurally barred under CPL §

440.10(2)(c) because they would have been part of the court record from the trial court's

Huntley/Dunaway hearing. *Id.* at 3–4.

Petitioner's allegations regarding withheld *Brady* material were found to be procedurally

barred because they were not factually supported. *Id.* "Such conclusory allegations are lacking

the underlying factual and substantiated foundation required with the filing of a CPL 440

motion." *Id.* at 4–6.

The court rejected credibility contentions of petitioner:

> Finally, the defendant's arguments regarding witness credibility were without merit: The jury had an opportunity to hear and evaluate the testimony . . . as well as any evidence admitted in conjunction with that testimony. The court is not convinced that such testimony presented significant discrepancies, let alone the "perjury" suggested by the defendant. Moreover, given the overwhelming evidence of guilt presented in this case, the defendant's continued claims about a change in the outcome of the trial had different evidence been presented or revealed in connection with the testimony are simply without merit.

*Id.* at 5.

### D. Writ of Error *Coram Nobis*

Petitioner filed a motion for a writ of error *coram nobis*, claiming that his appellate

counsel provided ineffective representation in his direct appeal by refusing to raise claims

petitioner presented to her, including the ineffective assistance of his trial counsel. *See* Writ of

Error *Coram Nobis* 7, 11–14, July 31, 2012, ECF No. 9-9. On March 20, 2013, the Appellate

Division denied petitioner's motion, finding that petitioner has failed to establish that he was

denied the effective assistance of appellate counsel. *People v. Hamilton*, 104 A.D.3d 874 (N.Y.

App. Div. 2d Dep't 2013).

9

### E. Instant Petition

By petition dated July 22, 2013, a writ of *habeas corpus* is sought. Petitioner asserts that (1) he was denied the right to confront Detective Dryver, who created the print card evidence that was introduced at trial; (2) the introduction of perjured testimony deprived him of due process, the right to a fair trial and equal protection; (3) the introduction of false and inflammatory evidence deprived him of due process; (4) crucial *Brady* material was withheld; and (5) he was denied effective assistance of counsel due to cumulative errors made by trial counsel and appellate counsel's failure to raise all the errors on direct appeal. Pet. for Writ of *Habeas Corpus*, July 22, 2013, ECF No. 1; Pet'r's Supplemental Mem. by Counsel in Supp. of Pet. for *Habeas Corpus*, Mar. 11, 2014, ECF 15; Pet'r's Reply to Resp. to Pet'r's Supplemental Mem. of Law, May 12, 2014, ECF No. 20; H'rg Tr., May 28, 2014; H'rg Tr. Mar. 20, 2015.

Hearings were conducted on May 28, 2014 and March 20, 2015. Petitioner participated from prison via telephone. Minute Entry, May 28, 2014, ECF No. 25; H'rg Tr. May 28, 2014; H'rg Tr., Mar. 20, 2015.

On March 20, 2015, the court orally denied the petition. H'rg Tr., Mar. 20, 2015. This memorandum explains the reasons for that decision.

On March 21, 2015, petitioner filed a motion for reconsideration. Letter Motion for Reconsideration by Rohan Hamilton, Mar. 21, 2015, ECF No. 67. That motion was denied since no substantial new grounds were asserted. *See* Order, March 27, 2015.

## III. Applicable Law

### A. Antiterrorism and Effective Death Penalty Act

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows a federal court to grant a writ of *habeas corpus* on a claim that was "adjudicated on the merits" in state

court only if: the court concludes the adjudication of the claim in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or, the court concludes that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a substantive, rather than a procedural, resolution of a federal claim. *See Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrived at a conclusion opposite to that reached by [the Supreme Court] on a question of law, or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *see also Bell*, 535 U.S. at 694. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *see also Duhs v. Capra*, 13-CV-1056, 2015 WL 428321, at *14 (E.D.N.Y. Feb. 3, 2015).

"[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002); *see also Yung v.*

11

*Walker*, 341 F.3d 104, 111 (2d Cir. 2003) (district court's *habeas* decision remanded for

reconsideration in light of "the more general teachings" of applicable Supreme Court decision).

Determination of factual issues made by a state court "shall be presumed to be correct," and the

applicant "shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence." 28 U.S.C. § 2254(e)(1).

## B. Exhaustion

In the past, a state prisoner's federal *habeas* petition had to be dismissed if the prisoner

did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy*, 455

U.S. 509, 522 (1989). "This exhaustion requirement [was] . . . grounded in principles of comity;

in a federal system, the States should have the first opportunity to address and correct alleged

violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731

(1991). The exhaustion requirement expected the petitioner to have presented to the state court

"both the factual and the legal premises of the claim he asserts in federal court." *Daye v.*

*Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, deny on the merits a

*habeas* petition containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C.

§ 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

state.").

## C. Procedurally-Barred Claims

A federal *habeas* court may not review a state prisoner's federal claims if those claims

were defaulted in state court pursuant to an independent and adequate state procedural rule,

unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the

alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *See Rush v. Lempke*, 500 Fed. App'x 12, 15 (2d Cir. 2012) (quoting *Coleman v. Thompson*, 501 U.S. 722, 724 (1991)).

If a state court holding contains a plain statement that a claim is procedurally barred, a federal *habeas* court may not review it. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision) (emphasis in original).

When a state court says that a claim is "not preserved for appellate review" and then rules "in any event" on the merits, such a claim is not preserved. *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996) (citations omitted). When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 (2d Cir. 2000).

## IV. Denial of Right to Confront

### A. Law

The Sixth Amendment's confrontation clause provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. It prohibits the admission of a witness's *testimonial* statements. *See Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford v. Washington*, 541 U.S. 36, 55–54 (2004)). Statements are "*non-testimonial* when made in the course of . . . interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to . . . meet an ongoing emergency" and are "*testimonial* when the circumstances objectively indicate . . .

that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822 (emphasis added).

### B. Application of Law to Facts

Petitioner claims that he was deprived of his right under the confrontation clause when palm-print photographs and out-of-court statements identifying them as petitioner's were introduced at trial for the purpose of proving his guilt. *See* Pet'r's Supp. Mem. 8. He argues that Detective Kennedy's testimony regarding the taking of his prints and the statements on the fingerprint cards violated his rights to due process and to confront Detective Dryver. *See id.* at 3–10; H'rg Tr., May 28, 2014.

He raised a form of this due process and confrontation clause claim on direct review. *See* Mem. in Supp. of Direct Appeal, ECF No. 9. The Appellate Division held that it was procedurally barred because his trial counsel had objected to the testimony at issue during trial on *hearsay* grounds, not on *confrontation clause*-grounds. *See People v. Hamilton*, 66 A.D.3d at 922.

State court default bars federal *habeas* review unless the petitioner can establish "cause," or he demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has not demonstrated a fundamental miscarriage.

Petitioner's trial and appellate counsel were constitutionally effective. *See infra* Part VIII. He has not shown that the State employs its procedural bar rules unevenly, unfairly, or improperly. *See, e.g.*, *People v. Kello*, 96 N.Y.2d 740, 744 (N.Y. 2001) (objection based upon hearsay did not preserve confrontation claim); *People v. Crawford*, 863 N.Y.S.2d 830, 831 (2d Dep't 2008) (same). Although he claims to be "actually innocent," powerful evidence of his guilt was introduced at trial. *See generally* Trial Tr. Petitioner's procedural default is not

excused by his argument that it would be a miscarriage of justice for this court not to reach his defaulted claims.

Even if the state court default did not bar *habeas* review, the Appellate Division reasonably determined, in the alternative, that petitioner's confrontation clause claim was without merit. *See People v. Hamilton*, 66 A.D.3d at 922. The state court decision on the merits was neither contrary to nor involved an unreasonable application of federal law as established by the Supreme Court. 28 U.S.C. § 2254(d)(1).

The prints themselves and the notation on the fingerprint card indicating that Detective Dryver took the prints from petitioner on the night of the murder. They were not directly accusatory and are therefore not "testimonial" under the confrontation clause. They were made primarily to identify defendant in order to process his arrest, not to create evidence for a trial. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 57–58 (1991) (fingerprinting is a natural part of "the administrative steps incident to arrest"); *see also United States v. Williams*, 720 F.3d 674, 698 (8th Cir. 2013) ("[T]he Supreme Court's concerns regarding confrontation in *Melendez–Diaz* and *Bullcoming* are [not] present here with respect to the fingerprint cards. Unlike the evidence in those cases, the fingerprint cards were created as part of a routine booking procedure and not in anticipation of litigation.").

There is a strong inference that an officer assigned in a murder case to take fingerprints of a suspect clearly linked to the crime would take the prints in a professional, correct way. Raising this point on trial would, with a high degree of probability, not have aided the defendant. In any event, Dryver testified at trial and was made available for cross-examination by defense counsel. *See* Trial Tr. 175–95. Defendant had the opportunity to cross-examine Jean, who lifted the latent print; Kennedy, who made the accusatory match; and Dryver, whose name was noted

on the ink fingerprint card. *Id.* at 145–64 (Jean), 175–95 (Dryver), 199–222 (Kennedy); *see also* Huntley/Dunaway Hr'g Tr. 2–50 (Dryver). Defendant's confrontation right was not violated in substance by Kennedy's testimony, including that regarding the notations on the fingerprint card. *See Crawford v. Washington*, 541 U.S. 36, 59, n.9 (2004) (The confrontation clause "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.").

At the hearing on the present petition, the court examined all documents introduced at trial regarding the prints. They appeared clear enough to permit an examination and a comparison for purposes of identification. Petitioner had the opportunity to produce an expert to make his own comparisons. *See* H'rg Tr. 48, May 28, 2014. No such expert was introduced by skilled counsel. *See* H'rg Tr. March 20, 2015. The inference is strong that had defense counsel contested these prints, the evidence would not have helped petitioner. *See infra* Part IV.

The original tape was inadmissible because it has not yet been recovered from a Hurricane Sandy-submerged warehouse. *See* Letter from Lawrence Mark Stern, Mar. 10, 2015, ECF No. 63; Letter in Opp'n from Anthea H. Bruffee, Mar. 12, 2015, ECF No. 64. No cover-up was involved.

## V. Introduction of False Evidence

### A. Law

The introduction of perjured testimony at a criminal trial violates due process where the prosecution knew or should have known of the perjury and where there is any reasonable likelihood that the perjured testimony could have affected the judgment of the jury. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *United States v. Agurs*, 427 U.S. 97, 103 (1976) *overruled on other grounds by United States v. Bagley*, 473 U.S. 667, 667 (1985); *cf. Drake v. Portuondo*, 321

321 F.3d 338, 345 n.2 (2d Cir. 2003) (to be entitled to relief post-AEDPA, defendant must establish prosecutorial knowledge of perjury).

## B. Application of Law to Facts

Petitioner argues that he was deprived of his constitutional rights to due process, equal protection under the law and a fair trial by the introduction of hearsay and apparent false testimony. Pet. for Writ of *Habeas Corpus* 17–22; Pet'r's Supplemental Mem. by Counsel in Supp. of Pet. for *Habeas Corpus* 3–9. Specifically, petitioner challenges the introduction of Kennedy's "apparently false" testimony that the inked exemplar print was taken from petitioner, and computer print-outs of photographs of prints rather than original prints or original photographs prints. Pet. for Writ of *Habeas Corpus* at 17–22, 28–29; Pet'r's Supplemental Mem. by Counsel in Supp. of Pet. for *Habeas Corpus* 3–9, 17–18.

Petitioner argues that the prosecution solicited false testimony from Kennedy by asking her to read the information from the exemplar fingerprint card stating that the prints were taken by Detective Dryver from petitioner on January 8, 2005. Pet'r's Supplemental Mem. by Counsel in Supp. of Pet. for *Habeas Corpus* 3–4. He asserts that Dryver did not take his fingerprints, the prosecution knew Dryver did not take his prints, and the introduction of Kennedy's testimony violated his due process rights. Pet'r's Supplemental Mem. by Counsel in Supp. of Pet. for *Habeas Corpus* 8–9.

This claim is unexhausted. Petitioner neither raised this claim, nor explored the factual predicates for it at his state trial. On his direct appeal, defendant made different claims of prosecutorial misconduct—that the prosecutor knowingly proffered the false testimony of his brother Uzal Hamilton and Criminalist Jean—which the state court held were unpreserved and

without merit. He did not raise the claim that Detective Dryver did not take his fingerprints or that the print used as an exemplar were not his.

Petitioner's claims that the prosecution knowingly presented Kennedy's perjured testimony are unsupported and entirely speculative. He argues that Detective Dryver's pre-trial testimony from a Huntley/Dunaway hearing demonstrates prosecutorial misconduct. *See* Pet.'s Supp. Mem. at 8. The pre-trial hearing addressed the question whether the police had probable cause for petitioner's arrest and whether his pre-trial statements were voluntary. Dryver testified that he was not present when defendant was apprehended near his father's house, *see* Huntley/Dunaway Hr'g Tr. 34:23–25, and that he did not believe that he transported defendant to Central Booking. *Id.* at 50:3–10. Petitioner argues that Dryver's pretrial testimony that he "was not present at the arrest procedure," *id.* at 34:25, and his trial testimony that he "placed [the defendant] under arrest," Trial Tr. 178:23–24, are inconsistent, thereby demonstrating that the prosecutor knowingly solicited false testimony regarding the taking of petitioner's fingerprints.

This testimony does not prove that Dryver did not take petitioner's fingerprints—a ministerial and simple act—particularly when considered together with Dryver's pre-trial testimony that he questioned petitioner during the night of his arrest, and was with him at the precinct off-and-on until 11:00 a.m. the next morning. *See* Huntley/Dunaway Hr'g Tr. 35–50. There is no evidence that the prosecutor *knowingly* solicited false testimony regarding the exemplar prints.

Petitioner's claim of knowing subornation of false evidence seems to be based primarily upon an omission of foundational evidence regarding the exemplar prints. He complains that no witnesses testified to having written the label on the inked print or to having compared the photographs of the prints to the original prints. Pet'r's Supp. Mem. 3–8. The alleged lack of

foundation for the admission of the computer printouts and the information on the ink prints' label raises state evidentiary matters that are not cognizable on *habeas* review. *See Jenkins v. Barra*, 663 F. Supp. 891, 899 (E.D.N.Y. 1987) (citation omitted) (federal review of state court conviction is limited to errors of constitutional magnitude which denied defendant a fair trial). They are routine matters not likely to have been made improperly.

## VI.  Evidentiary Claims

### A.  Law

For a *habeas* petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *United States v. Agurs*, 427 U.S. 97 at 108, *overruled on other grounds by Bagley*, 473 U.S. at 667. The standard is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. It must have been 'crucial, critical, highly significant.'" *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985) (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414–15 (5th Cir.1982)). This test applies post-AEDPA. *See Wade v. Mantello*, 333 F.3d 51, 59 (2d Cir. 2003); *Velilla v. Senkowski*, 02-CV-6458, 2003 WL 23198791, at *9 (E.D.N.Y. Oct. 30, 2003).

### B.  Application of Law to Facts

Petitioner argues that he was deprived of his constitutional rights to due process and a fair trial by the introduction of misleading testimony and inflammatory photographs.

He asserts the testimony that Dryver unsuccessfully followed petitioner's cell phone signals out of state when searching for him was misleading and its introduction violated petitioner's due process rights. This challenge is procedurally barred and without merit. It was

not made at either his state trial or later motion to vacate judgment. *See* 28 U.S.C. §
2254(b)(1)(A).

The challenged testimony was not misleading. Dryver testified to the actions he took in
trying to locate the petitioner in the two months between the crime and petitioner's arrest.
Petitioner has not shown the court erred in admitting Dryver's testimony, or that its error was so
pervasive so as to have denied him a fundamentally fair trial. *See Brathwaite v. Duncan*, 271 F.
Supp. 2d 400, 402 (E.D.N.Y. 2003).

With respect to petitioner's claim regarding the purportedly inflammatory photographs
the Appellate Division rejected it when it ruled on direct appeal that the trial court had:

> properly admitted autopsy photographs into evidence . . . [because the] photographs were
> not excessively gruesome, and were not introduced for the sole purpose of arousing the
> jurors' passions and prejudicing the defendant. Rather, the photographs were relevant
> both to help illustrate and corroborate the testimony of the medical examiner, and to
> establish intent. The fact that there was other evidence available with regard to these
> matters did not require the exclusion of the photographs.

*Hamilton*, 66 A.D.3d at 922 (internal citations omitted).

The Appellate Division's conclusion was neither an unreasonable determination of the
facts nor an unreasonable application of clearly established federal law as determined by the
Supreme Court. The photographic evidence to which petitioner objects, was accompanied by an
appropriate instruction, taken from the New York model jury instructions, regarding gruesome
photographic evidence. *See* 1 N.Y. Criminal Jury Instructions, CJI § 8.33 at 435 ("I now charge,
and I emphasize, that you are not to dwell upon these photographs; that, when you view them,
please do so quickly, calmly and unemotionally. I charge that you must make your
determination on the weight, if any, that you may see fit to give these photographs objectively,

without emotion and without prejudice."). They were appropriately admitted in the trial court's normal discretion over such matters.

Petitioner was not denied a fundamentally fair trial by this claimed error.

## VII. *Brady* Violation

### A. Law

The prosecution has a constitutional obligation to disclose exculpatory evidence to a defendant in a criminal matter. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). "A finding of materiality of the evidence is required under *Brady.*" *Giglio*, 405 U.S. at 154. Exculpatory evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Bagley*, 473 U.S. at 682). Nondisclosure merits relief only if the prosecution's failure "undermines confidence in the outcome of the trial." *Kyles v. Whitly*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678).

The Supreme Court has rejected any distinction between impeachment evidence and exculpatory evidence. *See Bagley*, 473 U.S. at 676. Impeachment evidence "is evidence favorable to an accused," *Brady*, 373 U.S. at 87, that, if disclosed and used effectively, "may make the difference between conviction and acquittal." *Id.* The "individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437; *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 59–60 (1987) (assuming that state child protective agency files could be *Brady* material).

21

## B. Application of Law to Facts

Petitioner claims that he was denied due process by the prosecution's alleged withholding of *Brady* material. He asserts that the prosecution withheld a photograph of the latent fingerprint Criminalist Jean purportedly made during her examination, an earlier lab report, and a police report. *See* Pet. for Writ of *Habeas Corpus* 28–31; Pet'r's Supp. Mem. 21.

In deciding his collateral CPL § 440 motion, the New York Supreme Court reasonably rejected petitioner's unsupported and speculative claims that the prosecution withheld a photograph of a latent fingerprint and an earlier laboratory report. *See New York v. Hamilton*, Decision & Order, No. 327/2005 (N.Y. Sup. Ct. July 13, 2011), ECF No. 9-6.

Petitioner offered no corroboration that an "earlier lab report and an additional photograph" existed or that, "if such supposed evidence existed, not only would it be favorable to his case, but it would have changed the entire outcome of the trial." *Id.* at 4–5. The court's adjudication of these claims was not contrary to, or an unreasonable application of, Supreme Court precedent or an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

Petitioner's current claim that the prosecution may have withheld a police report is unexhausted and without merit. He did not raise the present factual allegation that an exculpatory police report was withheld from the defense at his state trial or in his state motion to vacate judgment. His present claim that it may have been improperly withheld is based entirely on speculation. The redactions that were made to the police report in question strongly suggest that the prosecutor may well have disclosed this report to the defense in the ordinary course of discovery before trial, and then, for strategic reasons, defense counsel chose not to use it in his cross-examination.

Given the heavy weight of the evidence presented against him, even if the police report about petitioner's cell phone was exculpatory and improperly withheld under *Brady*, he has not demonstrated that it would have affected the outcome of the trial.

## VIII. Ineffective Assistance of Counsel

### A. Law

The Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). This test applies to a claim of ineffective assistance of counsel at any stage of the litigation. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001); *see also Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014) (per curiam) (internal quotation marks and citation omitted) ("When a defendant challenges a conviction, the question is whether there is a

reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.").

"[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes*, 337 F.3d 253, 260 (2d Cir. 2003) (quoting *Strickland*, 466 U.S. at 694) (brackets in original) (footnote omitted).

Reasonable strategic choices by counsel after an appropriate investigation of the facts and law are "virtually unchallengeable;" those "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691.

"The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations and quotation marks omitted). Courts "apply a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Rivas v. Fischer*, 13-PR-2974, 2015 WL 1036047, at *15 (2d Cir. Mar. 11, 2015) (citation and internal quotation marks omitted). Second guessing from the federal bench is seldom appropriate on tactical and strategic issues of counsel made in the heat of trial.

## B. Application of Law to Facts

### 1. Trial Counsel

Petitioner claims that his trial counsel was ineffective by failing to: (1) seek sanctions for alleged *Brady* violations; (2) conduct pre-trial investigation; (3) object to the prosecution's opening statement; (4) retain an independent fingerprint expert or request fingerprint reports; (5) appropriately cross-examine prosecution witnesses; and by (6) avoiding implicating him during summation.

Petitioner raised virtually identical claims in his *pro se* supplemental brief on direct appeal. *See* Pet'r's *Pro Se* Supplemental Br. 37–48. On October 20, 2009, the Appellate Division affirmed petitioner's conviction, ruling that the claims raised in his *pro se* supplemental brief were "unpreserved for appellate review and, in any event, [were] without merit." *See People v. Hamilton*, 66 A.D.3d at 922. On December 28, 2009, the Court of Appeals denied petitioner leave to appeal the appellate court's order affirming his conviction. *People v. Hamilton*, 13 N.Y.3d 907 (2009).

Petitioner's allegations regarding trial counsel's "cumulative errors" do not rise to the level of a Sixth Amendment violation. His ineffective assistance claims are, as the Appellate Division reasonably concluded, without merit.

His argument that trial counsel was ineffective for not requesting sanctions for alleged *Brady* violations is without merit since no *Brady* violations have been established. The record reveals that the prosecution made pre-trial disclosures to defense counsel of the emergency service report, the handwritten and two-page crime scene report with five photographs, the petitioner's mug shot, twenty color photographs of the crime scene, and personal photographs of the petitioner. *See Sandoval* Hr'g Tr. 15:15–16:1, Dec. 5, 2006, ECF No. 9-11. The prosecutor

confirmed that trial counsel received all other relevant documents. *Id.* at 16. Petitioner has failed to demonstrate that the prosecution intentionally withheld an exculpatory photograph of the latent fingerprint Criminalist Jean purportedly made during her examination, an earlier laboratory report, or a police report. *See supra* Part VI.

Petitioner's allegations that his trial counsel failed to conduct pre-trial investigation is meritless. He has failed to demonstrate that he had any alibi worth investigating. He presents no alibi evidence that trial counsel should have discovered and presented in his defense. *See* Pet. for Writ of *Habeas Corpus* 34. Assuming he could establish that the decision not to investigate or present an alibi defense was not strategic or otherwise legitimate, he would still be unable to show that he was prejudiced by this decision. *See DiMattina*, 949 F. Supp. 2d at 412.

An attorney's failure to make meritless objections provides no basis for concluding an attorney was ineffective. *See e.g., Harrington v. United States*, 689 F.3d 124, 130 (2d Cir. 2012) ("a petitioner cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit"). The prosecutor's opening comment regarding petitioner's four-year-old son being in the apartment when his mother was killed was arguably appropriate in that it outlined evidence the prosecutor intended to introduce in the prosecution's case. *See* Trial Tr. 31–33 (Uzal Hamilton) (testimony that petitioner arrived at his brother's home with his son and admitted to having shot the boy's mother); *id.* at 52–53 (McGrier) (same); *id.* at 57–59, 62 (Paschal) (testimony that the boy was home with his mother on the night of the shooting). Because the opening remarks were not clearly improper, trial counsel's objection would have been futile.

To demonstrate that an attorney was ineffective because he failed to explore a particular issue or present certain evidence, a petitioner must demonstrate the absence of strategic or other

legitimate explanations for defense counsel's failure. Petitioner argues that "no so-called strategic rationale was sufficient for avoiding expert analysis on behalf of the defense" to refute Jean's and Kennedy's fingerprint testimony. Pet'r's Supp. Mem. 13. However, "[i]n many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Harrington v. Richter*, 562 U.S. 86, 111 (2011); *Kendrick v. State*, E201102367SCR11PC, 2015 WL 240484, at *19 (Tenn. Jan. 16, 2015) ("In many cases, cross-examining the prosecution's expert will be just as effective as, and less risky than, utilizing a rebuttal expert. Each case must stand on its own facts."). Here, trial counsel adequately challenged the prosecution's fingerprint expert on cross-examination and in his summation—he challenged Kennedy's lack of experience and asserted that she had a motive to assist in obtaining petitioner's conviction. *See* Trial Tr. 240:22–241:6, 245:9–246:20.

The comments made by trial counsel during cross-examination and summation do not support an ineffective assistance claim. In cross-examining defendant's sister-in-law, defense counsel sought to use defendant's confession to illustrate that he was "only kidding around" about shooting the victim. Trial Tr. 54:24–55:9 (McGrier). Decisions "whether to engage in cross-examination, and if so, to what extent and in what manner, are . . . strategic in nature." *United States v. Nersian*, 824 F. 2d 1294, 1321 (2d Cir. 1987).

During summation, defense counsel's comment to the jury—"Don't you think [the police] could have found witnesses if they really wanted to? You better believe they would have witnesses if there was some cop's kid that got killed," Trial Tr. 242:8–11—did not suggest his belief in defendant's guilt. It went to defense counsel's theory of the case that the police had conducted a faulty investigation and the prosecution had not met its burden of proof. In any

event, petitioner was not prejudiced by this summation because the trial court struck it. *See id.* at 242:12–15.

Neither individually nor together do these items show lack of effective trial counsel or lack of guilt.

### 2. Appellate Counsel

Petitioner also suggests that his appellate counsel was ineffective in failing to advance most of defendant's present claims of ineffective assistance of trial counsel.

Appellate counsel for petitioner raised two claims on direct appeal: (1) that petitioner's Sixth Amendment right to confront was violated and; (2) he was denied a fair trial when inflammatory autopsy photographs were entered into evidence. *See* Resp't's Affirmation in Opp'n 5, ECF No. 9. Appellate counsel used reasonable professional judgment in deciding not to raise an ineffective assistance of trial counsel claim; it was a weak claim that would have potentially diluted stronger arguments. *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983). She explained that it made no sense to attack petitioner's trial attorney for failing to pursue arguments that she herself had correctly concluded would not entitle petitioner to relief as a matter law. *See* Aff. in Resp. to *Coram Nobis* Appl. 2–6, ECF No. 9-8.

Appellate counsel cannot be ineffective for failing to bring an ineffective assistance of trial counsel claim, where petitioner received satisfactory representation at trial, as was the case here. *See supra* Part VIII.

## IX. Unavailability of Fingerprint Evidence

Petitioner has sought the tape with which the deceased was bound so his expert might show—contrary to the prosecution's strong evidence—that his own palm print was not on the tape. *See* Subpoena by Rohan Hamilton, Dec. 26, 2014, ECF No. 50; Letter From Lawrence

Mark Stern, Mar. 10, 2015; "Airtek Environmental Corp. Report," Jan. 2, 2013, 4–5, Ex. 1, ECF No. 63-1; "Condition and Evaluation of the Forensic Evidence at the Erie Basin and Kingsland Avenue Storage Facilities; Post-Hurricane Sandy Phase I Recommendations," Dr. Theodore Kessis, et al. 3–10, Ex. 2, ECF No. 63-2; Ikone Aff. 2, Feb. 6, 2015, Ex. 3, ECF No. 63-3; Dep. of Deputy Commissioner Robert Martinez, Ex. 4, ECF No. 63-4. *See also* H'rg Tr., Dec. 9, 2014, ECF No. 47.

The Police Department has demonstrated that, effectively, this evidence is not available at this time because of damage due to Hurricane Sandy. *See* Airtek Environmental Corp. Report; Ikone Aff.; "Condition and Evaluation of the Forensic Evidence at the Erie Basin and Kingsland Avenue Storage Facilities; Post-Hurricane Sandy Phase I Recommendations," Dr. Theodore Kessis, et al.; Dep. of Deputy Commissioner Robert Martinez; Letter from Anthea Bruffee to Mag. J. Gold 2–3, Mar. 12, 2015, ECF No. 64. Counsel for defendant did not fall below minimum standards in not seeking out independent expert examination since, under the circumstances, the project had little likelihood of success.

At the hearing in this court, the tape issue and possible fabrication were fully considered and found meritless. *See* H'rg Tr. 6, 8, 24–5, Mar. 20, 2015 (upon hearing that the expert authorized for petitioner had no evidence and for other reasons the court found no basis for concluding the prints might have been a fabrication or mistake, the court concluded the issue closed); *id.* at 25–26 (distinguishing case from rape kits never examined). As summed up in colloquy with the court:

> THE COURT: There's always in these cases a possibility of miscarriage. There is a possibility here based on the material I have before me and the concession that the photographs actually presented show a match, so that the claim must rest on evidence that was fabricated, correct?

[COUNSEL FOR RESPONDENT]: Yes.

THE COURT: That's the claim with no basis at all because we now have a concession that there is a match with the photographs which appear to me and would appear to the average counsel with minimum skills sufficient to meet constitutional requirements to be clear enough.

[COUNSEL FOR PETITIONER]: Well, the expert doesn't agree with that.

THE COURT: Your expert?

[COUNSEL FOR PETITIONER]: That's correct.

THE COURT: . . . I don't have a report. So all I'm going to use from your expert is that there is match between the photos actually introduced and that's before me.

*Id.* at 27–28.

Sanction for failure to produce these tapes sought by petitioner is not warranted.

The absence of this material in the present record does not support granting the petition.

## X.   Certificate of Appealability

An appeal from a final order in a *habeas* proceeding involving process issued by a state court requires a certificate of appealability before an appeal can be taken. 28 U.S.C. § 2253(c) (1)(A).

A certificate of appealability is granted with respect to: (1) petitioner's right to confrontation; and (2) whether defense counsel provided a constitutionally adequate defense with respect to the issue of the duct tape, and whether a different defense would have changed the verdict. *Id.*

## XI. Conclusion

The motion for sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(i) is denied. *See* H'rg Tr., Mar. 20, 2015, ECF No. 71.

The motion for default judgment pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(vi) is denied. *Id.*

The petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2554 is denied. *Id.*

The motion for reconsideration is denied. *See* Endorsed Order, Mar. 24, 2015, ECF No. 71.

The New York City Police Department is under a continuing obligation to produce the duct tape, and to expedite that production to the extent possible. *See* H'rg Tr., Dec. 9, 2014, ECF No. 47; Hr'g Tr. 10:1–5, Dec. 22, 2014, ECF No. 54; H'rg Tr. Mar. 20, 2015; Letter to New York City Police Dept., Mar. 23, 2015, ECF No. 69. This issue is respectfully referred to the magistrate judge for decision. This referral is not intended by the court to affect the finality of this judgment of dismissal and certification. This court does not make a finding on finality.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: March 27, 2015
Brooklyn, New York